# STATE OF MINNESOTA
# IN COURT OF APPEALS
# A14-1746

Jon P. Hanbury, individually as father
and natural guardian of Andrew and Nick Hanbury,
Appellant,

vs.

American Family Mutual Insurance Company,
Respondent.

**Filed June 15, 2015**
**Affirmed**
**Hudson, Judge**

Hennepin County District Court
File No. 27-CV-14-1837

Timothy P. McCarthy, Gary K. Luloff, Chestnut Cambronne PA, Minneapolis, Minnesota (for appellant)

Louise A. Behrendt, Stich, Angell, Kreidler, Dodge & Unke, P.A., Minneapolis, Minnesota (for respondent)

Considered and decided by Reyes, Presiding Judge; Hudson, Judge; and Bjorkman, Judge.

## SYLLABUS

An insurance policy that provides underinsured motorist coverage only to insured persons who sustain bodily injury in a motor-vehicle accident complies with the Minnesota No-Fault Automobile Insurance Act.

## OPINION

**HUDSON**, Judge

In this appeal taken from the district court's entry of judgment in favor of respondent American Family Mutual Insurance Company (American Family), we consider whether an insurance policy that limits underinsured motorist (UIM) coverage to bodily injury sustained by an insured person complies with the Minnesota No-Fault Automobile Insurance Act (no-fault act). Because we conclude that the no-fault act requires UIM coverage be provided only for bodily injury sustained by an insured person, we affirm.

## FACTS

On August 30, 2010, Mary Ellen Hanbury was killed in an automobile accident caused by her husband's negligence. Mary Ellen's son, appellant Jon P. Hanbury, was not in the car when the accident occurred. Following Mary Ellen's death, appellant was appointed trustee for her next of kin. He filed a wrongful-death action against Mary Ellen's husband and settled that claim for $100,000, the maximum liability limit of her husband's insurance policy.

At the time of Mary Ellen's death, appellant and his children were insured under an automobile policy issued by American Family. The policy included UIM coverage in

2

the amount of $100,000 for "bodily injury to an insured person who is legally entitled to recover from the owner or operator of an underinsured motor vehicle." It is not disputed that, if Mary Ellen had survived, she would have been ineligible to recover UIM benefits from appellant's insurance policy because she is not an insured under the terms of the policy.

After appellant settled the wrongful-death action for the limits of Mary Ellen's husband's policy, he submitted a claim to American Family, his own insurer, for payment of UIM benefits, contending that his recovery from the wrongful-death settlement did not adequately compensate him for the losses that he sustained from Mary Ellen's death. American Family informed appellant that he was not eligible for UIM benefits because he had not suffered bodily injury in the automobile accident. Appellant subsequently filed suit against American Family, seeking a declaration that his UIM claim is covered by his insurance policy. Both parties moved for summary judgment and the district court entered judgment in favor of American Family. This appeal follows.

## ISSUE

Does an insurance policy omit coverage required by the no-fault act if it provides UIM coverage only to persons who sustain a bodily injury as the result of a motor vehicle accident?

## ANALYSIS

Appellant argues that the district court erroneously concluded that his insurance policy, which limits UIM coverage to bodily injuries sustained by an insured person, does not omit coverage required by the no-fault act. In reviewing a grant of summary

3

judgment, we consider whether: (1) genuine issues of material fact exist, and (2) the district court erred in applying the law. *State by Cooper v. French*, 460 N.W.2d 2, 4 (Minn. 1990). We view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in his or her favor. *STAR Centers, Inc. v. Faegre & Benson, L.L.P.*, 644 N.W.2d 72, 76–77 (Minn. 2002). When "the district court grants summary judgment based on the application of a statute to undisputed facts, the result is a legal conclusion that we review de novo." *Weston v. McWilliams & Assocs., Inc.*, 716 N.W.2d 634, 638 (Minn. 2006).

Generally, the extent of an insurer's liability is determined by its insurance contract with its insured. *Lynch ex rel. Lynch v. Am. Family Mut. Ins. Co.*, 626 N.W.2d 182, 185 (Minn. 2001). But insurance policies may not omit coverage required by law or contradict other applicable statutes. *Id.* Thus, if the terms of an insurance policy conflict with the no-fault act or omit coverage required by that act, we must declare those terms invalid. *Kwong v. Depositors Ins. Co.*, 627 N.W.2d 52, 55 (Minn. 2001). Because the parties agree that appellant's insurance policy only provides UIM benefits for "**bodily injury** to an **insured person,**" we consider only whether that exclusion omits coverage required by the no-fault act.

The no-fault act requires that every insurance policy issued in Minnesota provide certain first- and third-party coverage. Minn. Stat. §§ 65B.42, 49, subd. 3a (2014). UIM coverage is a form of first-party coverage required by the no-fault act and is provided for "the protection of persons insured under that coverage who are legally entitled to recover damages for bodily injury from owners or operators of underinsured motor vehicles."

4

Minn. Stat. § 65B.43, subd. 19 (2014). Insured persons include the named policyholder and that person's spouse, relatives, and custodial minors who reside with the policyholder and are not covered by any other insurance policy. *Id.*, subd. 5 (2014). An insured person is "legally entitled to recover damages" if that person has established "fault and damages" against the underinsured driver. *Miklas v. Parrott*, 684 N.W.2d 458, 461–62 (Minn. 2004).

Appellant claims that he is eligible for UIM benefits because the recovery he received in the wrongful-death action did not adequately compensate him for Mary Ellen's death. American Family contends that the no-fault act does not require UIM benefits to be paid to insured persons who have not suffered bodily injury in an automobile accident. Our resolution of this dispute requires us to consider whether an insured person is eligible to recover UIM benefits for pecuniary loss resulting from an uninsured person's death in an automobile accident in which the insured person was not involved.

## A

We begin by considering whether appellant is eligible to recover UIM benefits from his individual policy based on his status as the trustee in Mary Ellen's wrongful-death action. We note first that, although appellant made his UIM claim under his American Family policy *on his own behalf*, he has at various points also contended that he has "standing" to recover UIM benefits because he "is the trustee" under the wrongful-death statute. Thus, we address both contingencies, beginning with his status as trustee under the wrongful-death statute.

5

The wrongful-death statute states that:

> When death is caused by the wrongful act or omission of any person or corporation, the trustee appointed as provided in subdivision 3 may maintain an action therefor if the decedent might have maintained an action, had the decedent lived, for an injury caused by the wrongful act or omission.

Minn. Stat. § 573.02, subd. 1 (2014). Recovery on wrongful-death claims is limited to "the amount . . . deem[ed] fair and just in reference to the pecuniary loss resulting from the death, and shall be for the exclusive benefit of the surviving spouse and next of kin, proportionate to the pecuniary loss severally suffered by the death." *Id.* But the wrongful-death statute neither transforms the decedent's claim into the next-of-kin's claim nor permits the decedent's next-of-kin to file suit against the tortfeasor in his individual capacity. Rather, the wrongful-death statute, by its express terms, permits the trustee—here, appellant—to pursue the decedent's claim against the tortfeasor. *See* Minn. Stat. § 573.02, subds. 1, 3 (2014). And the trustee is permitted to maintain those actions that "the decedent might have maintained . . . had the decedent lived." *Id.*, subd. 1. It is undisputed that, had Mary Ellen survived, she would have been ineligible to recover UIM benefits from appellant's policy because she was not an insured under that policy. Accordingly, appellant is also precluded from recovering those same benefits as trustee in a wrongful-death action.

6

We next consider whether appellant is eligible to recover UIM benefits in his individual capacity because, as Mary Ellen's next-of-kin, he was legally entitled to recover damages in the wrongful-death action and because those damages did not adequately compensate him for her death. This appears to be an issue of first impression in Minnesota. Appellant argues that the no-fault act requires UIM benefits be paid to any insured person legally entitled to recover damages for bodily injury, even if the insured person was not the party who suffered the bodily injury. We disagree.

We "interpret statutes, such as the No–Fault Act, de novo." *Pepper v. State Farm Mut. Auto. Ins. Co.*, 813 N.W.2d 921, 925 (Minn. 2012). "The goal of all statutory interpretation is to 'ascertain and effectuate the intention of the legislature.'" *Caldas v. Affordable Granite & Stone, Inc.*, 820 N.W.2d 826, 836 (Minn. 2012) (quoting Minn. Stat. § 645.16 (2010)). The first step in statutory interpretation is to "determine whether the statute's language, on its face, is ambiguous." *Larson v. State*, 790 N.W.2d 700, 703 (Minn. 2010) (quotation omitted). A statute is ambiguous only if its plain language is subject to more than one reasonable interpretation. *Tuma v. Comm'r of Econ. Sec.*, 386 N.W.2d 702, 706 (Minn. 1986). Here, the relevant statutory definition of UIM coverage, which mandates coverage for the "protection of persons insured under that coverage who are legally entitled to recover damages for bodily injury," is ambiguous because it can be interpreted in two different ways. Minn. Stat. § 65B.43, subd. 19. First, it can be read, as appellant contends, to require coverage for any person's bodily injury, so long as the insured person is entitled to recover damages for that injury. Second, it can be read, as

American Family argues, to require coverage only for bodily injury sustained by the insured person. Because the statutory language is ambiguous, we look beyond the specific language of the statute to determine the legislature's intent. *Rohmiller v. Hart*, 811 N.W.2d 585, 589 (Minn. 2012). For several reasons, we conclude that the legislature intended for UIM benefits to be reserved for those who sustained bodily injury from a motor vehicle accident.

First, the legislature has expressly stated that the purpose of the no-fault act is to address "[t]he detrimental impact of automobile accidents on uncompensated *injured persons*." Minn. Stat. § 65B.42 (emphasis added); *see also Kelly v. State Farm Mut. Ins. Co.*, 666 N.W.2d 328, 330 (Minn. 2003) (quotation omitted) (explaining that UIM benefits protect "the named insured and other additional insureds from suffering an inadequately compensated injury"). The no-fault act is also intended to "relieve the severe economic distress of uncompensated victims of automobile accidents within this state." Minn. Stat. § 65B.42(1). A "victim" is commonly defined as a person "who is harmed or killed by another." *American Heritage Dictionary of the English Language* 1990 (3d ed. 1996). Those statutory provisions expressly limit the purpose of the no-fault act to ensuring that adequate compensation is paid for bodily injury. They do not suggest that the legislature intended for UIM coverage to extend to claims where, as here, the insured person has not suffered bodily injury and was not involved in the automobile accident, and the insured person is otherwise ineligible for UIM benefits.

Second, we are persuaded by the fact that the legislature made significant amendments to the no-fault act in 1985, which limited UIM coverage and "reflect[ed] a

8

broad policy decision to tie uninsured motorist and other coverage to the particular vehicle involved in an accident." *West Bend Mut. Ins. Co. v. Allstate Ins. Co.*, 776 N.W.2d 693, 699 (Minn. 2009) (quotation omitted); *see also Meyer v. Ill. Farmers Ins. Grp.*, 371 N.W.2d 535, 537 (Minn. 1985) (explaining that UIM coverage is different from most forms of first-party coverage because it follows the vehicle and "is intended to protect against . . . the risk that a negligent driver of another vehicle will have failed to purchase adequate liability insurance"). Prior to the 1985 amendments, insureds could stack UIM coverages under any insurance policy in which they were identified as an insured because public policy favored full compensation for injuries. Michael K. Steenson, *Minnesota No-Fault Automobile Insurance* § 15.01, at 5 (3rd ed. 2002). The 1985 amendments, which prohibited the stacking of UIM coverage and "otherwise limited the occupant's ability to collect additional like coverage" were passed to "stem rising insurance costs" that resulted from "prior law requiring expansive interpretation of vehicle insurance coverage." *West Bend*, 776 N.W.2d at 699 (quotations omitted); *see* Minn. Stat. § 65B.49, subd. 3a (codifying a portion of 1985 amendments). The 1985 amendments demonstrate that the legislature did not intend to provide the expansive UIM coverage that is sought here and further establish, by tying UIM coverage to the vehicle, that the legislature's priority was to ensure protection for those actually injured in an automobile accident.

Our conclusion is also informed by the plain language of other related provisions that govern the application and scope of UIM coverage. *See Milner v. Farmers Ins. Exch.*, 748 N.W.2d 608, 617 (Minn. 2008) (stating that this court may consider other

9

related statutes in assessing legislative intent). We note that those provisions make multiple references to the term "injured person." For example, Minn. Stat. § 65B.49, subd. 3a(5), which establishes a priority scheme to determine which UIM policies provide coverage, explains that, when the "injured person" is occupying a motor vehicle at the time of the accident, the "injured person's" coverage is the limit specified for that vehicle. Minn. Stat. 65B.49, subd. 3a(5). The same subdivision also states that, if the "injured person" is not an insured under the policy covering the vehicle that he or she was occupying when the accident occurred, the "injured person" may collect "excess insurance protection" from a policy under which the "injured person" is an insured. *Id.* Subdivision 4a of the same section provides that a person "injured" by two or more vehicles may recover UIM benefits whenever any one of those vehicles meets the definition of an underinsured motor vehicle. *Id.*, subd. 4a (2014). These references further demonstrate that the legislature contemplated that UIM coverage would extend only to those persons who sustained bodily injury in a motor vehicle accident.

Finally, if recovery were permitted here, insurance companies would be obligated to provide UIM coverage to insured persons for the automobile-related deaths of all people for whom the insured person was the next-of-kin. That result would impose considerable additional risk on insurance companies, essentially requiring coverage for the deaths of uninsured or underinsured persons who did not pay premiums for that coverage and who, if they had survived, would be ineligible to recover UIM benefits themselves. We do not believe that the legislature intended that result when it enacted the no-fault act. *Cf. McIntosh v. State Farm Mut. Auto. Ins. Co.*, 488 N.W.2d 476, 479

10

(Minn. 1992) (stating that those who pay premiums into a pool for insured motorist coverage do not "expect those funds to be available to pay compensation for injuries for which, if the uninsured motorist were insured, his insurance company would not have to pay"). For all of the above reasons, we conclude that the no-fault act requires UIM coverage be provided only for insured persons who sustain bodily injuries as the result of a motor-vehicle accident.[1]

## C

Finally, we consider whether the pecuniary loss that appellant suffered as a result of Mary Ellen's death constitutes a bodily injury separate from Mary Ellen's bodily injury claim that would entitle appellant to receive UIM benefits from his own insurance policy. Appellant contends that pecuniary damages are akin to loss-of-consortium damages and argues that he may recover those damages under his policy because we have previously permitted uninjured parties to recover UIM benefits for loss-of-consortium damages resulting from an automobile accident. We are not persuaded.

As appellant notes, we have previously concluded that an insurance policy that provides coverage for bodily injury also provides coverage for loss-of-consortium damages unless the policy contains specific language excluding that coverage. *Carlson v. Mut. Serv. Cas. Ins. Co.*, 527 N.W.2d 580, 583–84 (Minn. App. 1995), *review denied* (Minn. Apr. 27, 1995). We based our conclusion on the fact that loss-of-consortium

---

[1] We also note that our conclusion is consistent with a majority of jurisdictions that have addressed similar issues. *See Strum v. Swanson*, 653 S.E.2d 667, 673-78 (W. Va. 2005) (summarizing reasoning of decisions permitting and prohibiting recovery of UIM benefits where the insured person has not suffered bodily injury).

11

damages are "derivative from" bodily injury and that we had previously recognized that a bodily injury claim encompassed both actual injury and loss-of-consortium damages. *Id.*; *Beukhof v. Minn. Mut. Fire & Cas. Co.*, 502 N.W.2d 223, 224 (Minn. App. 1993), *review denied* (Minn. Aug. 6, 1993). We therefore permitted an uninjured spouse to recover UIM benefits for loss of consortium from the injured spouse's insurance policy. *Id.*; *see also Allstate Ins. Co. v. Henderson*, 895 F. Supp. 237, 238–40 (D. Minn. 1995) (permitting decedent's next-of-kin to recover UIM benefits for "pecuniary loss/loss of consortium" damages from the decedent's insurance policy).

Like a loss-of-consortium claim, a wrongful-death claim is "derivative in nature" because the damages recovered in that claim arise out of and are dependent on injuries to the decedent. W. Page Keeton et al., *Prosser & Keeton on the Law of Torts*, § 127 (5th ed. 1984). As a result, an insurance policy that provides UIM coverage for an insured person's bodily injury also provides coverage for pecuniary loss suffered by that person's relatives. *Cf. Beukhof*, 502 N.W.2d at 224 (stating that a loss-of-consortium claim is not a separate compensable injury, but is included in the personal injury claim). Here, however, appellant seeks UIM coverage for pecuniary loss from *his own* policy. Because pecuniary loss is derived from another party's personal injury, appellant is eligible to receive UIM benefits only from an insurance policy from which Mary Ellen is eligible to recover for her own personal injury. Because appellant's insurance policy does not provide UIM benefits for Mary Ellen's personal injury, appellant is also ineligible to recover UIM benefits for pecuniary loss from that policy.

## D E C I S I O N

Because we conclude that an insurance policy that limits payment of UIM benefits to claims where the insured person has suffered bodily injury is valid under the no-fault act, we affirm the district court's entry of judgment in favor of American Family.

**Affirmed.**